**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEVON PEOPLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | Judge |
| WHOLE FOODS MARKET, INC. | ) | Magistrate Judge |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Jevon Peoples, by and through his attorneys, complains of Defendant Whole Foods Market, Inc. as follows:

## NATURE OF THE ACTION

1. Plaintiff Jevon Peoples brings this action against his former employer Whole Foods Market, Inc. pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*., as amended ("Title VII"), the Illinois Human Rights Act, 775 ILCS 5/2-101 *et seq.* ("IHRA"), the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA"), seeking relief for illegal discrimination and retaliation, and under Illinois common law for retaliatory discharge for reporting unsafe working conditions.

## PARTIES

2. Plaintiff is an African American male who resides in DuPage County, Illinois, and was an employee of Defendant from 2004 to December 2022.

3. Defendant Whole Foods Market, Inc. is a Delaware corporation doing business in the State of Illinois and around the country, operating a chain of grocery stores.

4. At all relevant times, Defendant was and is an employer within the meaning of Title VII and the IHRA.

5. At all relevant times, Defendant employed more than 80,000 employees, thereby qualifying it as a covered entity under Title VII and the FMLA.

6. At all relevant times, Plaintiff was an employee within the meaning of Title VII and the IHRA.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, 28 U.S.C. § 1343(a)(4), and 28 U.S.C. § 2000e-5(f)(3).

8. This Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

9. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendant resides in this district and the events giving rise to Plaintiff's claims occurred in this district.

## ADMINISTRATIVE PROCEDURE

10. Plaintiff has exhausted all mandatory pre-complaint procedures required by law by filing timely administrative complaints with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR").

11. Specifically, on February 21, 2023, Plaintiff filed Charge No. 2023CF0893 with the IDHR and EEOC against Defendant for discrimination on the basis of race and retaliation.

12. A Notice of Opt Out of the Investigative and Administrative Process, Right to Commence an Action in Circuit Court or Other Appropriate Court of Competent Jurisdiction, and Order of Administrative Closure ("IDHR Letter") was issued and mailed by the IDHR on April 7, 2023, authorizing Plaintiff to commence action within 90 days of receipt. Plaintiff timely filed this complaint within 90 days of his receipt of the IDHR Letter.

13. Plaintiff timely requested that the EEOC adopt the IDHR's findings on May 4, 2023, and timely filed this complaint within 90 days of his receipt of notice of right to sue from the EEOC.

## FACTUAL ALLEGATIONS

14. Plaintiff Jevon Peoples was hired by Defendant on or about November 16, 2004, as a Cashier and worked at Defendant's Gold Coast location in Chicago.

15. Around March 26, 2007, Defendant promoted Mr. Peoples to Store Receiver.

16. Around the beginning of 2016, Defendant again promoted Mr. Peoples, to Lead Store Receiver and transferred him to the Hyde Park location. As Lead Store Receiver, Mr. Peoples managed the Receiving Department of his assigned store and was responsible for handling shipments, maintaining product integrity, and managing perishable goods, all of which was critical to the success of the store.

17. Mr. Peoples was regularly called on to address receiving issues in underperforming stores and to help open new stores, because of his knowledge and success in Receiving. He provided critical support to Receiving teams in more than fifteen regional stores. He mentored Receiving teams in some of these locations and certified team members to operate forklifts, an essential component of Receiving.

18. In 2018, Mr. Peoples was transferred to the Gold Coast location as the Lead Store Receiver, where he reported to Store Team Leader John Edwards.

### Mr. Peoples Was an Outstanding Employee

19. Mr. Peoples was transferred to the Gold Coast location largely because that store was struggling, and failing multiple times, to receive its "Order to Shelf" certification pertaining to its inventory management system that is in place to reduce spoilage and improve store

overhead. Mr. Peoples worked tirelessly for 21 days in a row and was instrumental in the store achieving this certification, on his first try.

20. Because of his commitment, dedication, and success in obtaining the Order to Shelf certification, Mr. Peoples was selected as one of four finalists for the 2019 Team Member of the Year award, out of more than 200 employees.

21. Throughout his employment, Mr. Peoples's performance met or exceeded Defendant's legitimate expectations.

22. Mr. Peoples regularly received positive feedback during his employment.

23. In June 2022, Defendant rated Mr. Peoples's performance as exceeding standards and gave him a raise.

**Mr. Peoples Begins Experiencing Discrimination**

24. In or around November 2021, Mr. Peoples began reporting to Store Team Leader Kristina Malicoat at the Gold Coast store.

25. Malicoat is Caucasian. At the time, Mr. Peoples was one of only two African American Team Leaders at the Gold Coast location.

26. From the start of beginning her position of Store Team Leader of the Gold Coast location, Malicoat engaged in a pattern of discrimination towards Mr. Peoples, including but not limited to the following:

a. During the first months of her employment at the Gold Coast store, Malicoat barely spoke or acknowledged Mr. Peoples.

b. Malicoat showed no interest in Mr. Peoples's work or role in managing the store's Receiving Department and while she had regular one-on-one meetings with other non-African American Team Leaders, she refused to have such meetings with Mr. Peoples, despite his repeated emails and requests.

c. Malicoat often undermined Mr. Peoples by refusing to communicate with him on matters within his role, knowledge, and expertise and instead chose to go

to others (non-African American) outside of the Gold Coast location. For example, in late summer of 2022 when the Meat Department was causing regular spoilage of products, Mr. Peoples attempted to advise Malicoat that to resolve this issue the lead in that department needed to follow the protocol already in place. Malicoat ignored him and reached out to Carlo Santucci, Principal Operations Lead of Midwest Receiving about the problem, and Santucci was confused why he was being asked about the issue when Mr. Peoples was in a better position to make that decision.

d. Malicoat often excluded Mr. Peoples from the monthly team meetings that non-African American employees attended.

e. Malicoat excluded Mr. Peoples from the decision-making process for matters affecting his department.

f. Malicoat stripped Mr. Peoples of his responsibility for conducting his subordinate's job reviews.

27. Around April 2022, Defendant's Gold Coast store was relocated to a new building in Chicago. Mr. Peoples participated in the planning and preparation for the opening of this new store, with his usual hard work, commitment, and dedication. Mr. Peoples was the only one of Malicoat's employees who was sent to work at this new location full-time during the pre-launch phase.

**Mr. Peoples Begins Making Safety Complaints About the New Building**

28. Starting around late July 2022, Mr. Peoples began complaining about the environmental air quality from the exhaust of diesel trucks and pre-construction debris in the new building to Malicoat and Assistant Team Leader Frank Gaughan, including that it needed a deep clean for employee safety.

29. Mr. Peoples was concerned about the amount of black exhaust circulating inside the building. He reported that the air curtain needed to be taken care of because it had not been cleaned since construction. There were times where he and other colleagues left work blowing black particles out of their noses. He believed that employees were forced to breathe

contaminated and unsafe air.

30. As a result, Mr. Peoples was deeply concerned about this issue and complained to Malicoat on multiple occasions, his last complaint occurring around October/November 2022.

31. However, nothing was done about his safety complaints.

**Mr. Peoples Complains About the Differential Treatment by the Store Manager**

32. In the fall of 2022, in his 2022 Culture Compass survey, which is sent to Defendant's headquarters, Mr. Peoples complained about the lack of African American leadership.

33. Starting around November 2022, Plaintiff began complaining about the mistreatment he experienced from Malicoat to Gaughan (Caucasian). Gaughan did nothing but tell Mr. Peoples to work it out with Malicoat on his own.

34. Mr. Peoples followed Gaughan's directive. In November 2022, Mr. Peoples approached Malicoat and told her that he wanted to improve their working relationship. Mr. Peoples expressed that the way she treated him was unjustified and unwarranted, given his performance and positive track record, and told her that he felt she was mistreating him because he is "a Black man in my role" or words to that effect. Malicoat did not deny that and instead immediately responded: "I don't like you."

**Mr. Peoples Requires FMLA Leave and Notifies Malicoat**

35. Around January 2022, Mr. Peoples re-applied for intermittent FMLA leave for his daughter's serious health condition. Defendant approved his FMLA leave.

36. In October 2022, when Mr. Peoples returned from his use of intermittent FMLA leave for a flare-up of his daughter's condition, he informed Malicoat that he had been absent due to his daughter's condition and had used his intermittent FMLA leave.

37. Defendant designated certain days in December as "blackout days" during which time employees were not ordinarily allowed to take off.

38. Mr. Peoples needed to take time off during this blackout period for his daughter's condition, and he received approval to take intermittent FMLA leave from December 12-16, 2022. Mr. Peoples notified Malicoat of his need for FMLA leave.

**False Accusations After Protected Complaints and Return from FMLA Leave**

39. Defendant began scrutinizing and investigating Mr. Peoples employment after he complained of race discrimination and safety issues, and took FMLA leave.

40. On December 29, 2022, Mr. Peoples was unexpectedly called into a meeting with Team Member Services Generalists (human resources) Jason Payne and Molly McGuidan. They questioned him, accusatorily, about his time and breaks, even though he explained how he had been following longstanding practices at his current store as well as other stores during his employment.

41. Other non-African American employees followed the same practices, and to Mr. Peoples's knowledge, they were not suspended or terminated.

42. Defendant immediately placed Mr. Peoples on an unpaid suspension and the next day, December 30, 2022, terminated his employment.

43. Defendant terminated Mr. Peoples's employment for discriminatory and pretextual reasons and in retaliation for his protected activity.

**COUNT I**
**(Title VII – Race Discrimination)**

44. Plaintiff hereby realleges and incorporates paragraphs 2 – 27, 32 - 34, and 39 - 43 of the Complaint, as if fully set forth herein.

45. Defendant engaged in discrimination against the Plaintiff on the basis of his race,

Black, by subjecting him to different and less favorable terms and conditions of employment, suspending him, and terminating his employment because of his race, in violation of Title VII.

46. Defendant discriminated against Plaintiff with malice and/or reckless indifference to his federally protected rights.

47. Defendant's actions in intentionally discriminating against Plaintiff caused him emotional distress, humiliation, pain and suffering, inconvenience, lost wages and benefits, pecuniary losses, and other compensatory and consequential damages.

WHEREFORE, Plaintiff Jevon Peoples respectfully requests this Court enter judgment in his favor against Defendant and awarding him all relief available under the law, including:

A. Lost wages and benefits;
B. Reinstatement or in the alternative, front pay for a reasonable period of time;
C. Compensatory damages;
D. Punitive damages;
E. Attorneys' fees and all costs and expenses of suit;
F. Pre- and post-judgment interest; and
G. Such other and further relief as the Court deems appropriate.

**COUNT II**
**(Title VII – Retaliation)**

48. Plaintiff hereby realleges and incorporates paragraphs 2 – 27, 32 - 34, and 39 - 43 of the Complaint, as if fully set forth herein.

49. Defendant retaliated against Plaintiff under Title VII by suspending him and terminating his employment for having engaged in protected activity, i.e., complaining about unlawful discrimination.

50. Defendant retaliated against Plaintiff with malice and/or reckless indifference to his federally protected rights.

51. Defendant's actions in retaliating against Plaintiff caused him emotional distress, humiliation, pain and suffering, inconvenience, lost wages and benefits, pecuniary losses, and

other compensatory and consequential damages.

WHEREFORE, Plaintiff Jevon Peoples respectfully requests this Court enter judgment in his favor against Defendant and awarding him all relief available under the law, including:

A. Lost wages and benefits;
B. Reinstatement or in the alternative, front pay for a reasonable period of time;
C. Compensatory damages;
D. Punitive damages;
E. Attorneys' fees and all costs and expenses of suit;
F. Pre- and post-judgment interest; and
G. Such other and further relief as the Court deems appropriate.

## COUNT III
## (Illinois Human Rights Act - Discrimination)

52. Plaintiff hereby realleges and incorporates paragraphs 2 – 27, 32 - 34, and 39 - 43 of the Complaint, as if fully set forth herein.

53. Defendant engaged in discrimination against the Plaintiff on the basis of his race, Black, by subjecting him to different and less favorable terms and conditions of employment, suspending him, and terminating his employment because of his race, in violation of the IHRA.

54. As a result of Defendant's actions, Plaintiff has suffered emotional pain and suffering, lost wages and benefits, and incurred attorney's fees and expenses.

WHEREFORE, Plaintiff Jevon Peoples respectfully requests this Court enter judgment in his favor against Defendant and awarding him all relief available under the law, including:

A. Lost wages and benefits;
B. Front pay;
C. Compensatory damages;
D. Attorneys' fees and all costs and expenses of suit;
E. Pre- and post-judgment interest; and
F. Such other and further relief, the Court deems appropriate.

**COUNT IV**
**(Illinois Human Rights Act - Retaliation)**

55. Plaintiff hereby realleges and incorporates paragraphs 2 – 27, 32 - 34, and 39 - 43 of the Complaint, as if fully set forth herein.

56. Defendant retaliated against Plaintiff under the IHRA by suspending him and terminating his employment for having engaged in protected activity, i.e., complaining about unlawful discrimination.

57. As a result of Defendant's actions, Plaintiff has suffered emotional pain and suffering, lost wages and benefits, and incurred attorney's fees and expenses.

WHEREFORE, Plaintiff Jevon Peoples respectfully requests this Court enter judgment in his favor against Defendant and awarding him all relief available under the law, including:

A. Lost wages and benefits;
B. Front pay;
C. Compensatory damages;
D. Attorneys' fees and all costs and expenses of suit;
E. Pre- and post-judgment interest; and
F. Such other and further relief, the Court deems appropriate.

**COUNT V**
**(FMLA Retaliation)**

58. Plaintiff hereby realleges and incorporates paragraphs 2 – 9, 14 – 23, and 35 - 43 of the Complaint, as if fully set forth herein.

59. At all times relevant to this lawsuit, Plaintiff was an "eligible employee" of Defendant within the meaning of the FMLA, 29 U.S.C. § 2611(2), in that he was employed for at least twelve months by Defendant and had worked at least 1,250 hours for Defendant during the twelve-month period preceding his intermittent medical leave in December 2022.

60. At times material hereto, Plaintiff's minor daughter had a medical condition that constituted a "serious health condition" within the meaning of 29 U.S.C. § 2611(11).

61. As an eligible employee who required time off because of his daughter's serious health condition, Plaintiff was entitled to take intermittent leave pursuant to the FMLA.

62. Plaintiff submitted FMLA medical certification for his daughter's serious health condition around January 2022 and Defendant approved his intermittent FMLA leave.

63. Plaintiff took approved protected intermittent FMLA leave in October 2022 because of a flare-up of his daughter's serious health condition.

64. Plaintiff took approved protected intermittent FMLA leave from December 12-16, 2022, because of his daughter's serious health condition.

65. Defendant retaliated against Plaintiff for exercising his FMLA rights by investigating and suspending him and ultimately terminating his employment on December 30, 2022.

66. Defendant's actions violate the FMLA, 29 U.S.C. § 2601, *et seq*.

67. Defendant's actions were willful and in reckless disregard of the Plaintiff's rights under the FMLA.

68. Defendant's actions and omissions have directly and proximately caused Plaintiff to suffer damages and other harm, including but not limited to lost wages and consequential damages.

WHEREFORE, Plaintiff Jevon Peoples respectfully requests this Court enter judgment in his favor against Defendant and awarding him all relief available under the law, including:

A. Declaring that the Defendant's acts and omissions constitute a violation of the FMLA;
B. Lost wages and benefits due to Defendant's violation of the FMLA;
C. Front pay;
D. Liquidated damages in an additional amount equal to the sum of the actual damages and interest pursuant to 29 U.S.C. § 2617(a)(1)(A);
E. Attorneys' fees and all costs and expenses of suit;
F. Pre- and Post-judgment interest; and

G. Such other and further relief, including equitable damages, as the Court deems appropriate.

**COUNT VI**
**(Common Law Retaliatory Discharge)**

69. Plaintiff hereby realleges and incorporates paragraphs 2 – 9, 14 – 23, 28 – 31, and 39 – 43 of the Complaint, as if fully set forth herein.

70. It is a violation of Illinois public policy for an employer to retaliate against an employee for reporting unsafe working conditions.

71. Plaintiff reported and complained about Defendant's unsafe air conditions that created an unsafe work environment for Plaintiff, other employees, and customers.

72. Plaintiff was terminated because of his complaints about safety. His complaints were a proximate cause of his termination.

73. Defendant acted with malice and deliberately to terminate Plaintiff's employment for protesting safety concerns.

74. Plaintiff was damaged as a result of the termination and lost income from being unemployed, and he suffered humiliation.

WHEREFORE, Plaintiff Jevon Peoples respectfully requests this Court enter judgment in his favor against Defendant and awarding him all relief available under the law, including:

A. Compensatory damages for emotional distress, pain, and humiliation, in an amount to be shown at trial;
B. Lost wages;
C. Punitive damages, in an amount to be determined at trial; and
D. Such additional relief as may be just and warranted in this action.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Respectfully submitted,

Dated: July 6, 2023

By: /s/ Thalia Pacheco
One of Plaintiff's Attorneys

Thalia Pacheco
FISH POTTER BOLAÑOS, P.C.
111 East Wacker Drive, Suite 2300
Chicago, IL 60601
(312) 861-1800
tpacheco@fishlawfirm.com
docketing@fishlawfirm.com