**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JEVON PEOPLES,**<br><br>Plaintiff,<br>v.<br><br>**WHOLE FOODS MARKET, INC.,**<br><br>Defendant. | Case No. 1:23-cv-04359<br>Judge: Thomas M. Durkin |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jevon Peoples ("Plaintiff") alleges that Defendant, Whole Foods Market Group, Inc. ("Whole Foods" or "Defendant") terminated his employment due to his race (African American) and in retaliation for his various internal complaints, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e *et seq.*, as amended ("Title VII"), the Illinois Human Rights Act, 775 ILCS 5/2-101 *et seq.* ("IHRA"), the Family and Medical Leave Act, 29 U.S.C. Sec. 2601 *et seq*. ("FMLA") and common law. Summary judgment against these claims is warranted for the reasons set forth below.

## I. STATEMENT OF FACTS AND SUMMARY OF THE ARGUMENT

Plaintiff was a Lead Receiver at the Whole Foods Gold Coast location, reporting to Assistant Store Team Leader ("ASTL") Frank Gaughan ("Gaughan"), who reported to Store Team Leader ("STL") Kristi Malicoat. Local Rule 56.1 Statement of Undisputed Material Facts, filed under Local Rule 56.1 ("SOF"), incorporated herein by reference, ¶¶1-73.

On December 28, 2022, Gaughan decided to review video security footage of Plaintiff, prompted by the fact that he just learned that Plaintiff had worked through lunch (contrary to company policy) yet also clocked out early. SOF ¶¶17-19. By reviewing the footage, Gaughan

learned that Plaintiff repeatedly had been doing the following when he arrived in the morning: he would pull-up, leave his car to clock-in, then return to his vehicle to park it, and then leave his vehicle to return and enter the Whole Foods' premises. SOF ¶¶20-23. Gaughan prepared a summary of his findings to the store's human resources representative, Molly McGuigan ("McGuigan"). SOF ¶¶24-25. McGuigan investigated by asking Plaintiff his side of the story and Plaintiff admitted that he had been engaging in that conduct for several months. SOF ¶¶28-29. When asked why he did this, Plaintiff said he was running late, for personal reasons. SOF ¶28. (Plaintiff had a history of tardiness-related warnings. SOF ¶¶9-11). McGuigan emailed James "Jim" Michell ("Michell"), who was one-step above McGuigan on the human resources hierarchy, providing all this information. SOF ¶¶30-31, 34. Prior to this, Michell did not know who Plaintiff was and had no prior interactions with Plaintiff. SOF ¶43.

Michell made the decision to terminate Plaintiff's employment. SOF ¶37. Whole Foods' written policies provide that falsifying records, including but not limited to timecards, and misrepresentation of time worked is a "major infraction" which warrants termination of employment. SOF ¶32. From Michell's perspective, Plaintiff's conduct constituted a clear and repeated violation of this policy, warranting termination. SOF ¶¶32, 37-38. It was Michell's understanding and experience that Whole Foods terminates the employee's employment when there is a misrepresentation of time worked. SOF ¶40. Indeed, he personally had done so on prior occasions. SOF ¶40.

Plaintiff has no evidence to contradict any of the facts stated above. Moreover, discovery has not identified a single example of an employee who engaged in conduct similar to Plaintiff's that did not result in termination. In fact, discovery identified several individuals who engaged in similar conduct and were terminated. SOF ¶¶51-52.

Therefore, summary judgment is warranted. Plaintiff presents no evidence suggesting that he was discharged for any reason other than as stated by Michell. Plaintiff alleges that Malicoat had malice towards Plaintiff due to his race, his FMLA leave, and his complaints. The facts he alleges, however, cannot support such an inference. Moreover, even if they did, it would not matter, because Malicoat was not involved in the decision to terminate his employment. SOF ¶¶37, 47, 66.

Plaintiff points to other kinds of alleged misconduct by other employees that did not result in termination. Yet, Plaintiff presents no evidence that this alleged conduct actually happened. SOF ¶¶53-61. Even if it did, it would not matter, because the decision-maker was unaware of these alleged instances, and regardless, viewed these kinds of conduct as entirely different than Plaintiff's conduct. SOF ¶¶53-61.

In sum, summary judgment is warranted. A more detailed summary of the facts is stated in the SOF and a more detailed discussion of the argument is set forth below.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party may not rest on mere allegations but must show through assembly of evidence that specific facts exist creating a genuine issue for trial. *Id*. at 256. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. ARGUMENT

### A. Plaintiff Cannot Show He Suffered Race Discrimination.

In this case, the "singular question" is whether Plaintiff can introduce evidence that would permit a reasonable factfinder to conclude that Plaintiff's race caused an adverse

employment action. *Igasaki v. Ill. Dep't of Fin. & Pro. Regul*., 988 F.3d 948, 957 (7th Cir. 2021).[1] "Whether a plaintiff offers direct or circumstantial evidence of discrimination, [the Seventh Circuit] made clear in *Ortiz v. Werner Enters., Inc.* [834 F.3d 760, 766 (7th Cir. 2016)] that all evidence belongs in a single pile and must be evaluated as a whole." *Igasaki*, 988 F.3d at 957. At summary judgment, what matters is whether a plaintiff presented enough evidence to allow the jury to find in his favor. *Id.* at 958.

**1. Plaintiff Presents No Evidence of Racial Animus by the Decision-Maker.**

Plaintiff cannot survive summary judgment because there is no evidence upon which a reasonable jury could conclude that Whole Foods discriminated against him because of his race. Plaintiff must do more than simply assert a belief that he was terminated due to his race. *Anderson v. Ill. Cent. R.R.Co.*, 2019 U.S. Dist. LEXIS 54862, at *44 (N.D. Ill. 2019) (The plaintiff's conclusory allegation that he felt like his manager looked and spoke to him because of his nationality is insufficient to create an inference of discrimination at the summary judgment stage).

Plaintiff fully admits that he engaged in the conduct which ultimately resulted in his termination. SOF ¶¶28-29. He alleges that Malicoat engaged in certain conduct, told him "I don't like you" and was "red in the face" when he returned from FMLA leave. SOF ¶62. However, even if these allegations were true (they are not), they do not suggest that the alleged dislike or anger was due to Plaintiff's race. Further, even if those facts demonstrated bias, Malicoat was not the decision-maker in Plaintiff's termination, nor is there any evidence that she was involved in the decision whatsoever. SOF ¶¶37, 47, 66; *Schreiner v. Caterpillar, Inc.*, 250 F.3d 1096, 1099 (7th Cir. 2011) ("derogatory comments are relevant only when attributable to the person who made the

[1] Discrimination claims under Title VII and the IHRA are analyzed under the same framework. *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866 (7th Cir. 2016); *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill.2d 172, 178-79 (1989).

adverse employment decision"); *Outley v. City of Chicago*, 354 F.Supp.3d 847, 866 (N.D. Ill. 2019) (biased remarks by non-decision maker do not evidence discriminatory motive). Rather, Michell made the decision, based solely on the information he received from McGuigan regarding Plaintiff's conduct. SOF ¶¶36-37. There is no evidence of any bias by Michell, who had no prior dealings with Plaintiff and was unaware of any of the various alleged complaints by Plaintiff. SOF ¶¶43-46. Thus, Plaintiff fails to present any evidence of racial animus by the decision-maker (or that any alleged animus affected his determination decision).

**2. Plaintiff Cannot Make a *Prima Facie* Case of Race Discrimination.**

Plaintiff fares no better under the *McDonnel Douglas* burden-shifting framework. Under that framework, Plaintiff must establish a *prima facie* case by showing: (1) he is a member of a protected class; (2) he suffered some adverse employment action; (3) at the time of the adverse action, his job performance met his employer's legitimate expectations; and (4) others who were similarly situated to him and not within his protected class were treated more favorably. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017). If successful, "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision." *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015). Should Whole Foods carry this burden, Plaintiff must offer evidence establishing a genuine dispute about whether Plaintiff's stated reason was pretext for discrimination, i.e. "more than a mistake," but rather, "a lie." *Id.* Plaintiff cannot prevail under this standard.

**a) Plaintiff's Termination is the Only Actionable Adverse Action.**

Plaintiff cannot prove he experienced an actionable adverse employment action aside from his termination. Under the Supreme Court's recent decision, *Muldrow v. City of St. Louis*, to prove an adverse employment action occurred, a plaintiff must show "some harm respecting an identifiable term or condition of employment." 144 S. Ct. 967, 974 (2024). In other words, Plaintiff

must show that Whole Foods' decisions about his employment made him "worse off" with respect to the terms and conditions of his employment. *Phillips v. Baxter*, 2024 U.S. App. LEXIS 10078, at *8 (7th Cir. 2024) (plaintiff's reassignment "was not an adverse action because there was no evidence that it left him 'worse off' with respect to the terms and conditions of his employment").

There is no evidence that any action Whole Foods took relating to Plaintiff, including any alleged conduct by Malicoat, made him "worse off" with respect to his terms and conditions of employment. SOF ¶¶62, 71; *Pierri v. Medline Indus.*, 970 F.3d 803, 807-808 (7th Cir. 2020) (plaintiff's complaints that his supervisor was rude and that his responsibilities shifted were not adverse actions). Thus, the only actionable adverse action Whole Foods engaged in was terminating Plaintiff's employment.

**b) Plaintiff Was Not Meeting Whole Foods' Legitimate Job Expectations.**

Plaintiff failed to meet Whole Foods' legitimate expectations. Legitimate expectations are not limited to the actual performance of duties. *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 540 (7th Cir. 2007). Rather, it is well established that compliance with company policies is a legitimate expectation. *Contreras v. Suncast Corp.*, 237 F.3d 756, 760-61 (7th Cir. 2001); *Cackovic v. HRH Chicago*, 2014 U.S. Dist. LEXIS 86864, at *24 (N.D. Ill. 2014) (an employee was not meeting legitimate expectations when she admitted to violating company policies).

Plaintiff admitted to the conduct which ultimately resulted in his termination, and such conduct constitutes a major infraction pursuant to Whole Foods' written policies. SOF ¶¶28-29, 32. As such, the undisputed evidence shows that Plaintiff was not meeting Whole Foods' legitimate expectations. *See Hill v. Norcomm Pub. Safety Communications, Inc.*, 07 C 4335, 2010 WL 5390982, at *10 (N.D. Ill. Dec. 22, 2010) (granting defendant's motion for summary

judgment and recognizing that an employee's admission to the at-issue conduct prevents the employee from establishing that he/she was meeting the employer's legitimate expectations).

Plaintiff attempts to justify that he engaged in that conduct by claiming that he essentially was taking his ten-minute break at the start of his shift. SOF ¶¶48, 54. However, this excuse does not work. By definition, a "break" is taken after some work is performed. Whole Foods' GIG explicitly prohibits taking a break at the beginning of a shift to arrive late, and Whole Foods' GIG states that breaks should be taken in the middle of each major portion of work. SOF ¶33, 48. Plaintiff's excuse also fails because it sidesteps the "misrepresentation" aspect of his conduct. Whole Foods, through Michell, viewed Plaintiff's clocking in as misrepresentation of time-worked, because by clocking in, Plaintiff was representing that he had arrived at work and was ready to work, when in fact, he still needed to leave and park his car before he could begin working. SOF ¶38. Plaintiff's assertions that he did not misrepresent a large number of minutes, and that he made up the minutes later, would be irrelevant even if they were supported by evidence. SOF ¶39.

In sum, Plaintiff fails to establish the third element of a *prima facie* case – that he was meeting Whole Foods legitimate expectations, and for that reason alone, Whole Foods should be granted summary judgment on Plaintiff's discrimination claims. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 666 (7th Cir.2006) (granting summary judgment because plaintiff admitted the conduct which the employer proffered as the reason for plaintiff's termination).

**c) There is No Evidence that Similarly Situated Employees Did What Plaintiff Did and Were Not Terminated.**

Plaintiff likewise cannot show that Whole Foods treated comparable non-African American employees more favorably. Plaintiff has failed to identify a single employee who engaged in the conduct that triggered Plaintiff's termination and were not terminated. SOF ¶53.

*Lichauco v. Nielsen*, 2018 U.S. Dist. LEXIS 30140, at *20 (N.D. Ill. 2018) (citing *Atanus v. Perry*, 520 F.3d 662, 675 (7th Cir. 2008)); *Bilal v. BP Am. Inc.*, 2006 U.S. Dist. LEXIS 899, at *17 (N.D.Ill. 2006) (finding the plaintiff could not establish a *prima facie* case of race discrimination because the plaintiff, who was black, had not identified any similarly situated employee who was treated more favorably and, in fact, two white employees were terminated by the same decision-maker as part of the same decision-making process). Similarly, here, the evidence shows that Whole Foods consistently terminated employees for misrepresentation of time-worked, including non-African American employees. SOF ¶¶26, 40, 50-52.

In their attempt to address this fundamental shortcoming in their case, Plaintiff points to others who allegedly engaged in misconduct that was different than Plaintiff's misconduct but were not terminated. These attempts fail for two reasons. First, Plaintiff fails to present admissible evidence that any of these employees actually engaged in the conduct Plaintiff alleges. SOF ¶¶53, 55-58. Plaintiff attempts to point to several alleged comparators who "worked at the beginning of [his/her] shift" and were not terminated. SOF ¶54. Yet, Plaintiff has not presented any admissible evidence that any of these individuals ever clocked in and then immediately went on break. SOF ¶¶53, 55-58. Similarly, Plaintiff's allegations that employees engaged in sexual harassment without being terminated fail. SOF ¶59. Plaintiff has not presented any admissible evidence that any of these individuals demonstrably engaged in sexual harassment. SOF ¶59.

Second, even if these employees had engaged in the conduct Plaintiff alleges, none of these individuals engaged in the kind of misconduct that triggered Plaintiff's termination, i.e., misrepresentation of time worked. SOF ¶¶37-38, 59. Research finds no case authority for the notion that the Court should (a) decide that an employer should have treated two different kinds of misconduct as being the same and (b) decide that the employer's failure to do so constitutes

evidence of discriminatory intent. On the contrary, it has been repeatedly emphasized that the Court does not act as a "super personnel department." *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 710 (7th Cir. 2017). Because Plaintiff has not identified a similarly situated non-African American employee who engaged in conduct similar to Plaintiff's, Plaintiff cannot meet the fourth element of the *prima facie* case. *Lewis v. Ziker Cleaners, Inc.*, 182 Fed. Appx. 577 (7th Cir. 2006) (affirming summary judgment against plaintiff's discrimination claims because plaintiff failed to identify a similarly situated employee outside of her protected class who was treated more favorably).

**d) Plaintiff Cannot Establish That the Stated Reason for His Termination is Pretextual.**

Even if Plaintiff could establish a *prima facie* case of discrimination, his claim would still fail because there is no evidence that Whole Foods' stated basis for termination is merely a pretext for discrimination. The issue in determining pretext is not whether the employer's stated reason was incorrect, inaccurate, or unfair, but whether the employer's proffered reason was honest. *Perez v. Thornton's, Inc.*, 731 F.3d 699, 708 (7th Cir. 2013); *Harden v. Marion Cnty. Sheriff's Dept.*, 799 F.3d 857, 866 (7th Cir. 2015). It is not the "court's concern . . . that an employer may be wrong . . . or be too hard on its employee." *Ranson v. CSC Consulting Inc.*, 217 F.3d 467, 471 (7th Cir. 2000). It is Plaintiff's burden to produce "specific evidence from which the finder of fact may reasonably infer that the proffered reasons do not represent the truth." *Hague v. Thompson Distrub. Co.*, 436 F.3d 816, 824 (7th Cir. 2006) (emphasis added). Speculation does not satisfy this burden. *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014).

Thus, Plaintiff must demonstrate with specific facts that Whole Foods lied about its reason for discharging him, not that Whole Foods was unfair or too harsh in doing so. Plaintiff has absolutely no evidence that provides any basis for finding pretext. As explained above, Plaintiff

admitted that he engaged in the conduct which ultimately resulted in his termination. SOF ¶¶28-29. *Burton v. USF Logistics*, 2005 U.S. Dist. LEXIS 6151 at *18 (N.D. Ill. 2005) (granting defendant employer's motion for summary judgment because plaintiff did not produce evidence that the reasons proffered by defendant employer for his discharge were factually baseless).

Even if Plaintiff believes that Whole Foods punished him too harshly by terminating him, the Court does not act as a "super-personnel department." *Milligan Grimstad*, 877 F. 3d at 710. So long as there is no admissible evidence that Plaintiff's race drove Whole Foods' decision to terminate his employment, that decision would not violate Title VII or the IHRA. "A personality conflict doesn't ripen into [a Title VII] violation simply because … the parties [are of different races]. . . . Facts, not an employee's perceptions and feelings, are required to support a discrimination claim." *Uhl v. Zalk Josephs Fabricators, Inc.*, 121 F.3d 1133, 1137 (7th Cir. 1997).

In sum, the evidence shows that Whole Foods honestly believed that Plaintiff committed the major infraction of misrepresentation of time worked. *Atanus*, 520 F.3d at 674 (affirming the district court's grant of summary judgment to defendant employer because plaintiff admitted to the at-issue conduct which resulted in the adverse employment action, and that given this, a jury could not reasonably find that defendant employer's stated reasons for the adverse action are not the real reasons or that the conduct was insufficient to warrant the adverse action).

**B. Plaintiff Cannot Present Evidence that Whole Foods Retaliated Against Him.**

Plaintiff claims that Whole Foods terminated him in retaliation for complaining of alleged discrimination and/or for exercising FMLA rights. (Compl. ¶¶28-29, 49, 65, 71-72). A plaintiff may prove retaliation by using either the direct method or the indirect, burden-shifting method. *Tomanovich*, 457 F.3d at 662. Plaintiff must show that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id. Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Under the indirect method, Plaintiff must demonstrate: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; (3) he was meeting his employer's legitimate expectations; and (4) he was treated less favorably than similarly situated employees who did not engage in protected activity. *Johnson*., 325 F.3d at 897. If he successfully establishes this *prima facie* case, to survive summary judgment, Plaintiff must then demonstrate that Whole Foods' legitimate, non-retaliatory basis for the adverse action is merely a pretext and that the real reason is retaliation. *Id*.

In other words, the analysis is essentially the same as it is for Plaintiff's claim that he was terminated due to his race. Therefore, these claims fail for the same reasons that Plaintiff's claim of race discrimination fail, as discussed above. Plaintiff fails under the direct method of proof, because the statements Plaintiff alleges Malicoat made do not suggest that she was unhappy with him for complaining. Assuming as true the absurd allegation that Malicoat said, "I don't like you," she could have disliked him for any of a variety of reasons. SOF ¶62. Even flimsier is the allegation that Malicoat allegedly looked angry when Plaintiff returned from FMLA leave somehow suggests that this anger was because Plaintiff had taken FMLA leave, rather than any of the many other reasons she could have been angry at that moment. SOF ¶62.

Further, even if one could conclude that Malicoat had retaliatory animus, it was Michell, not Malicoat, who made the decision to terminate Plaintiff's employment. SOF ¶¶37, 47, 66. Michell had no knowledge of Plaintiff's alleged complaints, and even if one assumes that he somehow was aware of these, there is no evidence that he was unhappy with Plaintiff for making these complaints. SOF ¶¶37, 46-47, 66. *See Mercil v. Federal Express Corp.*, 664 F. Supp. 315, 318 (N.D. Ill. 1987) (granting summary judgment where plaintiff failed to show that decisionmakers knew of alleged protected activity).

Plaintiff similarly fails under the indirect method – again, for the same reasons that he fails under the indirect method for his race discrimination claim. It is undisputed that Plaintiff was terminated for misrepresentation of time-worked, after he admitted to that conduct. SOF ¶¶28-29, 37-38. Further, Plaintiff presents no evidence to suggest that Malicoat had any involvement in the decision to terminate him. SOF ¶¶37, 47, 66. Therefore, he fails to meet the *prima facie* case requirement of a retaliation claim.

Further, Plaintiff fails to meet the *prima facie* case requirement because he cannot show that Whole Foods treated comparable employees who did not complain more favorably. Plaintiff fails to present evidence that his alleged comparables engaged in the conduct Plaintiff states that they engaged in. SOF ¶¶53-56. Moreover, even if the individuals engaged in such conduct, the conduct was different than the kind of conduct Plaintiff engaged in, and the decision-maker in any event was unaware of that alleged conduct. SOF ¶¶53-61. *See Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 786 (7th Cir. 2007) (holding that the district court did not err granting summary judgment in favor of defendant on plaintiff's retaliation claim because plaintiffs did "not put forth competent evidence that they were treated differently than a similarly situated employee outside of their protected class, they failed to establish a *prima facie* case for their retaliation claim"); *Formella v. Brennan*, 817 F.3d 503, 517 (7th Cir. 2016) (same); *Cox v. Coca-Cola*, 191 F. Supp. 3d 909, 922 (S.D. Ind. 2016) (recognizing that alleged comparators that engaged in comparable conduct are actually not comparators because the decision maker in plaintiff's termination had "nothing to do" with the decision regarding the alleged comparators).

Plaintiff's retaliation claim fails for yet another reason. The decisionmaker in Plaintiff's termination, Michell, was unaware of the fact that Plaintiff complained about alleged

discrimination and took intermittent FMLA leave.[2] SOF ¶46. Malicoat was not involved in the decision to terminate Plaintiff's employment. SOF ¶¶37, 47, 66; *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009) "[P]roof of retaliation under the indirect method presupposes that the decision-maker knew that the plaintiff engaged in a statutorily protected activity, because if an employer did not know the plaintiff made any complaints, it 'cannot be trying to penalize him for making them.') (citation omitted); *Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 513 (7th Cir. 2021) (holding that the district court correctly granted summary judgment on defendant employers' retaliation claim because plaintiff lacked any evidence that the decision-makers knew that she had engaged in protected activity, she has failed to raise a genuine issue of material fact in support of causation for her retaliation claim).

In sum, Plaintiff presents no evidence that the stated basis for his termination – misrepresentation of time worked – was a lie and the real motive was retaliation. *See Atanus*, 520 F.3d at 674 (affirming the district court's grant of summary judgment to defendant employer because plaintiff admitted to the at-issue conduct which resulted in the adverse employment action, and that given this, a jury could not reasonably find that defendant employer's stated reasons for the adverse action are not the real reasons or that the conduct was insufficient to warrant the adverse action). As a result, Plaintiff's retaliation claim fails.

**C. Plaintiff Cannot Show Common Law Retaliatory Discharge.**

Retaliatory discharge is a narrow exception to at-will employment. *Hartlein v. Illinois Power Co.*, 601 N.E.2d 720, 728 (Ill. 1992). To establish a claim for retaliatory discharge, a plaintiff must show: 1) he was discharged; 2) there is a causal link between his discharge and his

---

[2] With respect to Plaintiff's FMLA retaliation claim specifically, at the time of Plaintiff's termination, Michell was supporting the Gold Coast store, because the Team Member Services Team Leader who normally supported the store was out of office that day. SOF ¶34. Accordingly, Michell was not Plaintiff's normal Team Member Services Team Leader and had no visibility into his FMLA leave. SOF ¶46. The same is true for any other alleged complaints by Plaintiff. SOF ¶46.

alleged protected activity; and 3) his discharge violates a clear mandate of public policy. *Meister v. Georgia-Pacific Corp.*, 43 F.3d 1154, 1160 (7th Cir. 1995). The Seventh Circuit uses the well-established burden-shifting approach to analyze issues and evidence in a claim for retaliatory discharge in violation of public policy. *McEwen v. Delta Airlines, Inc.*, 919 F.2d 58, 59 (7th Cir. 1990). Thus, if an employee can establish his *prima facie* case, the employer can still overcome it by showing that it had a legitimate, lawful reason for the termination. *Bell v. Jewel Food Stores*, 83 F. Supp. 2d 951, 960 (N.D. Ill. 2000). If the employer establishes a legitimate reason for the discharge, the burden shifts back to the employee to prove that the proffered reason was pretext for retaliation. *Id*.

In other words, the analysis is essentially the same as it is for Plaintiff's claim that he was terminated in retaliation for complaining of discrimination and/or taking FMLA leave. Therefore, these claims fail for the same reasons that Plaintiff's claim of retaliation under the anti-discrimination statutes fail, as discussed above. Plaintiff cannot prevail under the direct method, as he fails to identify any evidence that Malicoat or anyone else was upset with him about complaining about air quality. Further, even if he could do so, he can present no evidence that the decision-maker, Michell, was aware of any such complaints, or had any malice towards him due to those complaints. SOF ¶46. "Factual support that the employer was informed or in some way found out about the plaintiff's [alleged protected activity] is essential to a retaliatory discharge action." *Mercil*, 664 F. Supp. at 318 (emphasis added) (granting summary judgment where plaintiff failed to show that decisionmakers knew of alleged protected activity).

Similarly, Plaintiff fails under the indirect method, as discussed in the preceding section. Plaintiff fails to present a *prima facie* case because he admitted to the rule violations that led to his termination, and as such, he was not meeting his employer's legitimate expectations. Further,

Plaintiff cannot show that Whole Foods treated comparable employees who did not complain more favorably; he fails to present evidence that his alleged comparables engaged in the conduct Plaintiff states that they engaged in and even if the individuals engaged in such conduct, the conduct was different than the kind of conduct Plaintiff engaged in. SOF ¶¶53-61. Moreover, as discussed above, Whole Foods had a legitimate, lawful reason for the termination, and there is absolutely no evidence of pretext.

Finally, it is worth noting that Plaintiff asks the Court to expand the retaliatory discharge claim past the point that the Illinois courts have permitted such claims thus far. *Harris v. Bath & Body Works, LLC*, 14 C 3886, 2015 WL 8778145, at *6 (N.D. Ill. Dec. 15, 2015). Yet, the Illinois courts have expressed great reluctance to expand this tort. *Id.*; *Trochuck v. Patterson Companies, Inc*., 851 F. Supp. 2d 1147, 1151 (S.D. Ill. 2012); *Nance v. Comcast Bus. Communications, Inc.*, 17 C 8094, 2018 WL 2118142, at *3 (N.D. Ill. May 8, 2018).

In sum, Whole Foods should be awarded summary judgment against Plaintiff's retaliatory discharge claim.

## III. CONCLUSION

For the reasons stated above, Whole Foods respectfully requests that this Court enter an Order granting its Motion for Summary Judgment on all of Plaintiff's claims, with costs.

Dated: November 21, 2025

Respectfully submitted,

*/s/ Maria A. Palivos*
One of Its Attorneys

David K. Haase, Bar No. 6201278
dhaase@littler.com
Maria A. Palivos, Bar No. 6342554
mpalivos@littler.com
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1100
Chicago, IL 60654
Telephone: 312.372.5520
Facsimile: 312.372.7880

## CERTIFICATE OF SERVICE

I, Maria Palivos, an attorney, certify that on November 21, 2025, I caused a true and correct copy of the foregoing document to be filed electronically with the Clerk of the Court, using the Court's CM/ECF system, which served a copy upon the following counsel of record:

Thalia Pacheco
Heidi Sleper
Workplace Law Partners, P.C.
155 N. Michigan Ave., Suite 719
Chicago, IL 60601
tpacheco@fishlawfirm.com
hsleper@fishlawfirm.com
docketing@fishlawfirm.com

*Attorneys for Plaintiff*

*/s/ Maria A. Palivos*